## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HEND GHOBRIEL, individually and on behalf of all others similarly situated,<br><br>        **Plaintiff,**<br><br>v.<br><br>IRON MOUNTAIN INCORPORATED and IRON MOUNTAIN INFORMATION MANAGEMENT, LLC,<br><br>        **Defendants.** | Case No. 16-cv-6367<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Hend Ghobriel ("Plaintiff"), individually and on behalf of other similarly situated individuals, by and through her undersigned attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, as and for her class action complaint, alleges, with personal knowledge as to her own actions and based upon information and belief as to those of others, as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this class action against Iron Mountain Incorporated ("Iron Mountain") and Iron Mountain Information Management, LLC ("IMIM") for violations of New York's statutory and common law.

2. Pursuant to New York's Public Health Law ("PHL") § 18(2)(e), health care providers are prohibited from charging patients and other "qualified persons" who request copies of patient information more than $0.75 per page for such copies.

3. However, Defendants charge Plaintiff and members of the putative class $1.50 per page plus postage, in blatant violation of PHL § 18(2)(e).

4.     By representing that they are authorized to charge $1.50 per page plus postage, when they are forbidden from charging more than $0.75, Defendants have acted deceptively to the detriment of New York consumers.

5.     Based on Defendants' conduct, Plaintiff asserts claims against Defendants for (1) violation of PHL § 18, (2) violation of New York's General Business Law ("GBL") § 349 *et seq.*, and (3) unjust enrichment.  Plaintiff seeks monetary damages consisting of the difference between the lawful charge and the actual charge, statutory damages of $50.00 per wrongful act, and injunctive relief prohibiting Defendants from further wrongful conduct, as well as any other available relief at law or in equity.

## PARTIES

6.     Plaintiff Hend Ghobriel ("Plaintiff") is an individual and citizen of New York State residing in the village of Suffern in Rockland County, New York.  Ms. Ghobriel is a member of the Class, as defined below.  Ms. Ghobriel, through her counsel, was charged by IMIM and paid to IMIM approximately $1.69 per page for 6 pages worth of hard copies of the records of the medical care she received at the Mid-Rockland Imaging Associates Division of Hudson Valley Radiology Associates ("HVRA").  Plaintiff may have need for further copies of her HVRA medical records.

7.     Defendant Iron Mountain Incorporated is a for-profit corporation organized under the laws of the State of Delaware.  Iron Mountain is headquartered in Boston, Massachusetts, and does business in the State of New York.

8.     Defendant Iron Mountain Information Management, LLC is a for-profit limited liability company organized under the laws of the State of Delaware.  IMIM is headquartered in Boston, Massachusetts, and does business in the State of New York.  IMIM operates as a wholly-

owned subsidiary of Iron Mountain and provides information management and data storage services.  Subsequent to October 17, 2013, IMIM has done business as "Cornerstone Records Management."

9.      Cornerstone Records Management, LLC ("Cornerstone") was a for-profit limited liability company organized under the laws of the State of Delaware.  Cornerstone provided health information management services to health care providers, including management of the release of patient information.  Cornerstone was headquartered in Elkridge, Maryland, and did business in the State of New York.  On October 17, 2013, Cornerstone merged into IMIM.

## JURISDICTION AND VENUE

10.      Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d)(2), as minimal diversity exists, there are more than 100 class members, and the amount in controversy is in excess of $5 million.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (c)(2), because (i) Defendants' contacts are sufficient to subject them to personal jurisdiction in this District and (ii) a substantial part of the events and omissions giving rise to the claims occurred in this District.  Furthermore, Plaintiff resides in this District.

## FACTUAL BACKGROUND

**I.      New York Public Health Law § 18 Forbids Charges
For Copies Of Patient Information In Excess Of Seventy-Five Cents Per Page.**

12.      PHL § 18(2)(d) requires that, upon written request by a patient or other qualified person for that patient's medical records, a health care provider must furnish a copy of the patient information requested.

13.      PHL § 18(1)(g)-(h) defines "qualified person" broadly to include, among other things, any attorney representing a qualified person.

14.     PHL § 18(2)(e) places a cap on the amount of money a provider may charge for

such copies, stating that "the reasonable charge for paper copies shall not exceed seventy-five

cents per page."

**II.     On Behalf Of Health Care Providers, Cornerstone
        And IMIM Provided Copies Of Requested Medical Records.**

15.     Cornerstone was and IMIM is a provider of release of information ("ROI")

solutions to various health care providers, including, but not limited to, HVRA and other

providers in New York State.

16.     Cornerstone had and IMIM has contracts with New York health care providers to

(a) manage their patient's medical records, (b) respond to requests for patient information, and

(c) produce copies of records of patient information to patients and other qualified persons.

17.     Cornerstone and IMIM obtained these contracts by offering health care providers

reduced expenses in connection with providing responses to requests for medical records.

Indeed, on the "Cornerstone Records Management" website, Cornerstone and IMIM boasted that

their ROI services were free of charge and that all of their fees would be paid by the requesting

parties.[1]

**III.    Cornerstone And IMIM Charged Fees
        Expressly Prohibited By New York Law.**

18.     On February 10, 2011, Ms. Ghobriel retained Jacoby & Meyers, LLP ("J&M") to

represent her in a personal injury matter.  Pursuant to her retainer agreement, J&M was

authorized to incur reasonable costs and expenses in connection with its representation of Ms.

---

[1] *See* https://web.archive.org/web/20130329155024/https://roi.cornerstone-rm.com (ROI fees
"are fully paid for by those requesting medical records") (reflecting website as of March 29,
2013) (last visited August 5, 2016) *and*
https://web.archive.org/web/20150711223804/http://roi.cornerstone-rm.com/ (same) (reflecting
website as of July 11, 2015) (last visited August 5, 2016).

Ghobriel, and she was obligated, regardless of the outcome of the matter, to reimburse J&M for such costs and expenses.  Furthermore, the agreement expressly contemplated that the necessary costs, expenses, and disbursements might include medical records retrieval fees.

19.     On February 10, 2011, Ms. Ghobriel executed and acknowledged a power of attorney authorizing J&M to execute on her behalf HIPAA medical authorization forms pursuant to PHL § 18(1)(g).

20.     On or about February 16, 2011, Ms. Ghobriel signed a HIPAA-compliant medical records authorization in favor of Secure Record Services ("SRS"), a vendor of J&M, for purposes of obtaining her medical records.

21.     On or about February 22, 2011, Ms. Ghobriel signed a HIPAA-compliant medical records authorization in favor of J&M for purposes of obtaining her medical records.

22.     On or about January 9, 2014, J&M, on Ms. Ghobriel's behalf and through SRS, requested copies of her patient information from HVRA, from whom Ms. Ghobriel had received medical care relating to the injury underlying her personal injury claim.

23.     On or about January 23, 2014, IMIM, doing business as "Cornerstone Records Management," submitted an invoice to SRS for $10.12 for 6 pages worth of hard copies of her medical records from HVRA, reflecting a fee of approximately $1.69 per page.  A true and correct copy of the invoice is attached as Exhibit 1.  The invoice was broken down into a "Paper Records" charge of $1.50 per page for 6 pages of records (totaling $9.00) and a "Postage" charge of $1.12.

24.     Nowhere on the invoice did IMIM state that the amount being charged was greater than the amount allowable under New York State law.

25.     SRS, on behalf of J&M, paid the full amount of the invoice to IMIM in order to obtain copies of the requested medical records.

26.     Subsequently, IMIM mailed the copies of Ms. Ghobriel's patient information in hard copy (i.e., paper copy) form to SRS.

27.     On or about February 12 and 26, 2014, SRS received copies of Mr. Ghobriel's medical records from IMIM and then forwarded digital copies of the same to J&M, who received them on or about February 13 and March 5, 2014, respectively.

28.     Subsequently, J&M, on behalf of Plaintiff, reimbursed SRS for its disbursement to Cornerstone for the copies of the medical records, and Ms. Ghobriel reimbursed J&M for its disbursement to SRS out of the funds that she received pursuant to a settlement agreement in her personal injury case.

29.     The fees charged to Plaintiff and the other members of the Class by Cornerstone and IMIM exceeded the limit established by PHL § 18.

30.     Neither Cornerstone nor IMIM ever informed Plaintiff or other members of the Class that such fees are prohibited by law or that Plaintiff and the members of the Class are entitled to a lower per page rate.

31.     This practice was deceptive and misleading due to Cornerstone and IMIM's failure to disclose that the fees above $0.75 per page were illegal and did not need to be paid.

32.     A reasonable consumer would understand and believe from Cornerstone and IMIM's invoices that the fees were lawful and appropriate.

33.     As a result of this practice, Plaintiff and members of the Class paid more for their medical records then if Cornerstone and IMIM had not acted deceptively.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action on her own behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons, who, at any time from August 10, 2010, to the present (the "Class Period"), paid for, or are obligated to pay for, copies of an individual's patient information requested from a "health care provider" by a "qualified person" as those terms are defined in New York PHL § 18(1)(g), for which copies Cornerstone or IMIM charged in excess of $0.75 per page (the "Class").

35.     Plaintiff reserves the right to amend the above definitions, or to propose other or additional classes, in subsequent pleadings and/or motions for class certification.

36.     Plaintiff is a member of the Class.

37.     Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; and any legal representative, predecessor, successor, or assignee of Defendants.

38.     This action is brought as a class action under Rule 23(b)(3) for the following reasons:

a.     Plaintiff believes that there are thousands of members of the Class as described above, though the exact number and identities of the Class members are currently unknown;

b.     The Class is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

c.     There are questions of law or fact common to each Class that predominate over any questions affecting only individual members, including but not limited to the following:

       i.           Whether Defendants charged amounts for medical records in excess of $0.75 per page;

       ii.          Whether Defendants' conduct as described herein was deceptive and/or misleading;

       iii.        Whether Defendants knew or should have known that charging a per page fee greater than $0.75 for the records was unlawful and deceptive;

       iv.        Whether Defendants' conduct as described herein violated New York PHL § 18;

       v.         Whether Defendantts' conduct as described herein violated New York GBL § 349 *et seq.*;

       vi.        Whether Defendants were unjustly enriched by the conduct described in this herein;

       vii.       The appropriate form of injunctive relief; and

       viii.     The appropriate measure of monetary relief.

    d.      The claims asserted by Plaintiff are typical of the claims of the members of the Class she seeks to represent;

    e.      Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation;

    f.      Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants;

    g.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy for at least the following reasons:

       i.           Absent a class action, members of the Class, as a practical matter, will be unable to obtain redress;

       ii.          It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

   iii.  When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class;

   iv.  A class action will permit an orderly and expeditious administration of the Class's claims; foster economies of time, effort, and expense; and ensure uniformity of decisions;

   v.  The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

   vi.  Defendants have acted on grounds generally applicable to members of the Class, making class-wide monetary relief appropriate.

39. Plaintiff also seeks certification under Rule 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the Class. Defendants should be required to cease charging fees in excess of the limits established by PHL § 18 and disgorge all ill-gotten profits collected to date. As such, Plaintiff and the members of the Class are entitled to injunctive relief in the form of an order as above described.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (PHL § 18)

40. Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

41. Plaintiff brings this cause of action on behalf of herself and the members of the Class.

42. Cornerstone was and IMIM is required to adhere to the requirements of New York PHL § 18 when providing medical records to Plaintiff and other Class members.

43. Pursuant to PHL § 18(2)(e), health care providers (or parties acting on a provider's behalf) are prohibited from charging patients and other "qualified persons" who request copies of patient information more than $0.75 per page for such copies.

44.     Cornerstone and IMIM systematically violated PHL § 18 by, among other things, charging amounts in excess of $0.75 per page for copies of medical records produced in response to requests by qualified persons, including Plaintiff and members of the Class.

45.     Plaintiff Ghobriel, through her counsel, was charged by IMIM and paid to IMIM approximately $1.69 per page for 6 pages worth of hard copies of the records of the medical care she received at HVRA.

46.     Cornerstone and IMIM engaged in these illegal practices to the detriment of Plaintiff and other Class members.

47.     Plaintiff and other Class members were injured and suffered a monetary loss as a result of Cornerstone and IMIM's violations of PHL § 18.

48.     By reason of the foregoing, Defendants are liable to Plaintiff and the members of the Class for damages they have suffered as a result of Cornerstone and IMIM's actions, the amount of which will be determined at trial, as well as any other remedies afforded at law or in equity.

## SECOND CAUSE OF ACTION
### (GBL § 349)

49.     Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

50.     Plaintiff brings this cause of action on behalf of herself and the members of the Class.

51.     This action is brought to secure redress for the deceptive practices perpetrated by Cornerstone and IMIM against Plaintiff and the Class members.

52.     Plaintiff and Class members were the consumers and the end users and intended beneficiaries of Cornerstone and IMIM's services.

53.     As providers of ROI services to the consuming public and whose conduct affected similarly situated consumers and had a broad impact on consumers at large, Cornerstone and IMIM were engaged in consumer-oriented conduct within the intended ambit of GBL § 349.

54.     Cornerstone and IMIM's actions and/or omissions as described herein violated GBL § 349 *et seq.*, which was enacted to protect the consuming public from those who engage in deceptive acts or practices in the conduct of any business, trade, or commerce.

55.     Specifically, Cornerstone and IMIM knowingly misrepresented and intentionally omitted material information regarding the fees charged for copies of patient information. Cornerstone and IMIM charged and were paid fees in excess of the $0.75 per page maximum established by PHL § 18.

56.     Despite knowledge that these fees were prohibited by law, Cornerstone and IMIM failed to inform Plaintiff and the members of the Class that they were under no obligation to pay any fees for copies of patient information above a rate of $0.75 per page.

57.     A reasonable consumer would understand and believe from Cornerstone and IMIM's invoices that the fees were lawful and appropriate.

58.     Cornerstone and IMIM's deceptive and misleading actions and omissions as set forth herein caused injury to Plaintiff and the Class members.

59.     By reason of the foregoing, Defendants are liable to Plaintiff and the members of the Class for actual damages they have suffered as a result of Cornerstone and IMIM's actions, the amount of which will be determined at trial, statutory damages, treble damages, reasonable attorneys' fees and costs, and punitive damages, as well as any other remedies afforded at law or in equity.

## THIRD CAUSE OF ACTION
## (UNJUST ENRICHMENT)

60.     Plaintiff repeats and re-alleges the allegations contained above as if fully set forth herein.

61.     Plaintiff brings this cause of action on behalf of herself and the members of the Class.

62.     By Cornerstone and IMIM's wrongful acts and omissions of material facts, Defendants were unjustly enriched at the expense of Plaintiff and members of the Class.

63.     At all relevant times, even prior to issuing its invoices for copies of patient information, Cornerstone and IMIM knew that charging fees in excess of $0.75 per page for copies of patient information was prohibited by PHL § 18.

64.     Nevertheless, Cornerstone and IMIM assessed and collected such illegal fees.

65.     As a result, Defendants were unjustly enriched at the expense of Plaintiff and other members of the Class to the extent Cornerstone and IMIM collected fees in excess of the $0.75 per page maximum established by PHL § 18.

66.     It would be inequitable and unconscionable for Defendants to retain the profit, benefit, and other compensation they have obtained from Cornerstone and IMIM's fraudulent, deceptive, and misleading conduct alleged herein.

67.     By reason of the foregoing, Plaintiff and the Class are entitled to restitution and disgorgement by Defendants of all monies unjustly and inequitably retained by Defendants in connection with Cornerstone and IMIM's production of responses to requests for patient information, as well as any other remedies afforded at law or in equity.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that the Court grant relief against Defendants as follows:

a.  Certifying this action as a class action, with the Class as defined above;

b.  Appointing Plaintiff as representative of the Class;

c.  Appointing Plaintiff's counsel as counsel for the Class;

d.  Issuing proper notice to the Class at Defendants' expense;

e.  Awarding compensatory damages to Plaintiff and the members of the Class in an amount according to proof at trial;

f.  Awarding treble damages to Plaintiff and the members of the Class in an amount according to proof at trial;

g.  Awarding statutory damages to Plaintiff and the members of the Class pursuant to GBL § 349;

h.  Awarding restitution and disgorgement of Defendants' revenues or profits to Plaintiff and members of the Class;

i.  Awarding prejudgment interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

j.  Awarding equitable relief to Plaintiff and the members of the Class in the form of an injunction prohibiting Defendants from charging fees in excess of the limits established by PHL § 18;

k.  Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action to Plaintiff and the members of the Class to the extent permitted by GBL § 349 or other applicable law; and

13

l.      Awarding Plaintiff and the Class such other and further relief as this Court deems

just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a

trial by jury.

Dated: August 10, 2016
       White Plains, New York

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By:  ___s/ Todd S. Garber_____
Todd S. Garber (TSG4620)
D. Greg Blankinship (GB1723)
John D. Sardesai-Grant (JS2011)
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
tgarber@fbfglaw.com
gblankinship@fbfglaw.com
jsardesaigrant@fbfglaw.com

*Attorneys for Plaintiff and the Putative Class*